*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 07-1594

CHRISTOPHER BRATTAIN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00293—Robert Holmes Bell, Chief District Judge.

Argued: June 10, 2008

Decided and Filed: August 25, 2008

Before: MARTIN and BATCHELDER, Circuit Judges; JORDAN, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Elisa Castrolugo, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Ray S. Kent, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Elisa Castrolugo, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Ray S. Kent, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellee.

MARTIN, J., delivered the opinion of the court, in which JORDAN, D. J., joined. BATCHELDER, J. (p. 5), delivered a separate concurring opinion.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. The United States appeals the sentence imposed by the district court on Christopher Brattain after he pled guilty to aggravated sexual abuse of a minor. The district court refused to apply a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b), stating that the enhancement applied only to offenders who had abused multiple victims, and Brattain had abused a single victim over a period of seven years. The government argues that the district court's refusal to apply the enhancement was error because Brattain qualified as a repeat-

_____
[*] The Honorable R. Leon Jordan, Senior District Judge for the Eastern District of Tennessee, sitting by designation.

offender, and Congress explicitly revised the enhancement to apply to repeat-offenders who abuse only a single victim. We agree with the government, VACATE Brattain's sentence, and REMAND for resentencing.

I.

On January 21, 2005, Brattain's daughter disclosed to her mother, Brattain's wife at the time, that her father had been touching her private parts. After being confronted by his wife, Brattain admitted to sexually abusing his daughter. Brattain's wife, a United States Air Force staff sergeant at Sheppard Air Force Base in Wichita Falls, Texas, promptly reported her husband's conduct to military police. The military police contacted the Air Force Office of Special Investigation, who then later turned over the investigation to the FBI.

During a February 8, 2005, interview with the FBI, Brattain confessed to repeatedly sexually abusing his daughter over a seven-year period, starting at the age of three and continuing until the age of ten. The majority of the incidents took place at various military installations, including Sheppard Air Force Base.

On August 9, 2006, a federal grand jury in Wichita Falls indicted Brattain, charging him with aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 2241(c) and 2244. On September 21, 2006, Brattain was arrested in the Western District of Michigan, where he had moved to reside with his mother and stepfather after his marriage ended in divorce. He consented to the transfer of the case to the Western District of Michigan, and on January 8, 2007, he pled guilty to aggravated sexual abuse of a minor.

The probation office prepared a Presentence Investigation Report after Brattain's guilty plea. The Report suggested a total offense level of 38 and a criminal history category of I, resulting in an advisory guidelines range of 235 to 293 months' incarceration. The total offense level included, among other enhancements and reductions, a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) because Brattain "engaged in a pattern of activity involving a prohibited sexual conduct."

Brattain objected to the total offense level, and specifically to the application of the five-level enhancement under § 4B1.5(b)(1). Brattain argued that the enhancement should not apply to him because it was intended to deter recidivism and he did not present a high risk of recidivism given that his was a crime of incest with only one victim, his eldest daughter. He further argued that the enhancement was intended for cases involving multiple victims. The government attempted to rebut Brattain's argument by pointing out that the current version of § 4B1.5(b)(1) did not require more than one victim, reflecting a deliberate change by Congress to expand the definition of repeat-offenders to include defendants like Brattain who engage in a pattern of sexual abuse against one victim over a period of time. The government also argued that Brattain presented a risk to society given his sexual preference for minors.

The district court sided with Brattain, finding that § 4B1.5(b)(1) was directed toward repeat offenders who engaged in a pattern of activity involving the sexual abuse or exploitation of minors. Here, the district court found that Brattain had abused only one victim, and the sentencing commission had not made it clear that such a defendant should fall under 4B1.5(b)(1). Accordingly, the district court reduced his total offense level from 38 to 33, which when combined with a criminal history category of I resulted in an advisory guidelines range of 135 to 168 months' imprisonment. Brattain was then sentenced to 144 months' imprisonment followed by ten years of supervised release.

The government now appeals the district court's sentence, arguing that the district court erred in its interpretation of the applicability of § 4B1.5(b)(1).

## II.

"Post- Booker, [this Court] review[s] a district court's sentencing determination, 'under a deferential abuse-of-discretion standard' for reasonableness, which, as the Supreme Court has recently confirmed, has two components: procedural and substantive." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (internal citations omitted) (quoting *Gall v. United States*, 128 S.Ct. 586, 591 (2007)). When reviewing for procedural reasonableness, this Court ensures that the district court correctly calculated the applicable Guidelines range – "the starting point and initial benchmark" of its sentencing analysis. *Id.* (quoting *Gall*, 128 S.Ct. at 596). "In reviewing the district court's calculation of the Guidelines, [this Court] still review[s] the district court's factual findings for clear error and its legal conclusions de novo." *Id.*

The question before this Court is whether the district court erred when it held that § 4b1.5(b)(1) did not apply to Brattain because he had sexually abused only a single victim, his daughter. We now find that the district court did err.

The current version of § 4B1.5(b)(1) states that a five-level enhancement applies when "the defendant engaged in a pattern of activity involving prohibited sexual conduct . . . ." U.S.S.G. § 4B1.5(b)(1) (2006). Application Note 4 states that "a defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5, cmt. n.4(B)(i).

Rather than apply the Application Note, the district court focused on the Background Note to § 4B1.5, which states that "[t]his guideline is intended to provide lengthy incarceration for offenders who commit sex offenses against minors and who present a continuing danger to the public." U.S.S.G. § 4b1.5, cmt. background. The Background Note further states that Congress directed the Sentencing Commission to "ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." *Id.* Based on the use of the plural term "minors" in the Background Note – despite the use of the singular term "minor" in the actual enhancement section – the district court found that § 4B1.5(b)(1) did not apply to Brattain because he had abused only a single victim.

First, we believe the plain language of § 4B1.5(b)(1) and its application note apply to defendants who abuse only a single victim. The Application Note provides that a defendant who engages in prohibited sexual conduct with a minor on at least two separate occasions has engaged in a "pattern of activity" for purposes of § 4B1.5(b). *See* U.S.S.G. § 4B1.5, cmt. n.4(B)(i). Second, even if the Application Note is deemed ambiguous given the use of the plural term "minors" in the Background Note, the legislative history of the current version of this enhancement easily clears up any confusion.

The prior version of § 4B1.5(b)(1) required there to be multiple victims for a defendant to be considered a repeat-offender and subject to the five-level enhancement. However, in 2003 Congress specifically addressed this enhancement. The congressional committee recognized that the 2001 version of § 4B1.5(b)(1) applied only to defendants who "engaged in prohibited sexual conduct on at least two separate occasions with at least two different minor victims." H.R. Conf. Rep. No. 108-66, at 694 (2003). Congress found that definition did not "adequately take account of the frequent occurrence of repeated sexual abuse against a single child victim, and the severity of the harm to such victims from the repeated abuse." *Id.* In an effort to broaden § 4B1.5(b)(1)'s scope to include defendants who repeatedly "abuse [] the same victim on separate occasions," *id.*, Congress amended the Application Note 4(B)(i) to eliminate the requirement of at least two minor victims in order for the enhancement under § 4B1.5(b)(1) to apply. Accordingly, we find that the district court erred in ruling that § 4B1.5(b)(1) did not apply to Brattain.

We quickly address Brattain's argument that Congress did not intend for § 4B1.5(b)(1) to be applied to defendants who commit incest. We have found no case law in our circuit differentiating between sexual abuse of a child and incest. And while there may be a compelling argument that defendants who commit incest with a single victim have much lower rates of recidivism, Congress has yet to adopt that argument. Because Congress did not differentiate between the two, we are bound by the definitions as they exist in the guidelines, and incest does not receive any less harsh treatment than does aggravated sexual abuse of a minor.

### III.

Based on the foregoing, we VACATE Brattain's sentence, and REMAND for resentencing. However, we think it is important to note that while the district court made one error in calculating the guidelines, the district court should remain mindful that the sentencing guidelines are merely advisory. The guidelines provide a requisite starting point in any sentencing determination, but they are not determinative of a district court's ultimate decision when sentencing a defendant. Here, the district court correctly applied the § 3553(a) factors and gave more than adequate reasoning in support of Brattain's sentence. The same detailed application of the § 3553(a) factors and explicit reasoning in support of the sentence will hopefully be repeated on remand.

―――――――――――

**CONCURRENCE**

―――――――――――

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in the opinion, although I do not believe the discussion in Section III of the lead opinion is appropriate. I write separately with regard to the lead opinion's discussion of USSG § 4B1.5(b)(1) and its applicability to the crime of incest. The record's depiction of Brattain is wholly inconsistent with his argument that § 4B1.5(b)(1) was not intended to apply to individuals such as himself, because his crime was incest, he had only one victim, and, like other persons who commit incest, he presents a low risk of recidivism. Brattain's attention was not limited to KB, and his interests were not purely incestuous. He admits to having fantasized about having sex with both KB and her sister. He frequented a pornography site that depicted young children engaged in sexual activities, and, according to the PSR, he characterized himself as having "a problem he could not control." Brattain's having abused "only" KB may be more a matter of opportunity — or lack thereof — than an indication that he presents a low risk of recidivism. Whatever "compelling arguments" may be made regarding recidivism rates for individuals who commit incest, they are irrelevant here.