**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0803n.06

No. 15-5290

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 10, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES OF AMERICA,**

      **Plaintiff-Appellee,**

v.

**TERRANCE BROWN,**

      **Defendant-Appellant.**

                  /

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE**

**BEFORE: COLE, Chief Judge; SUTTON, Circuit Judge; BELL, District Judge.**[*]

      **BELL, District Judge.** Terrance Brown challenges the substantive reasonableness of his 96-month sentence for statutory rape, 18 U.S.C. § 2243(a). After considering the Sentencing Guidelines and the relevant factors under 18 U.S.C. § 3553, the district court issued a sentence 18 months higher than the top of the Guidelines range. We affirm.

I.

      When he was 18 years old, Brown was caught having sex with a 13-year old girl at the Naval Support Activity base in Millington, Tennessee. His victim was a child with "significant learning and intellectual disabilities," "low communication and socialization skills," a verbal IQ of 68, and a non-verbal IQ of 65. (Sentencing Hr'g Tr. 6, R. 58.) After his arrest, Brown gave a written statement to the Naval Criminal Investigative Service describing his conduct in graphic detail. (Presentence Report 4, R. 13.) Brown asserted that he had sex with the victim on four

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

occasions over the course of two weeks. During each of the first three incidents, he was aware that he was causing her significant physical pain. He had to push "hard" to get inside her. (*Id.*) She bled. She "ma[de] noise like it was hurting her." (*Id.*) Nevertheless, he "pushed on [through]." (*Id.*) Immediately after the first and third incidents, Brown observed that the victim was in so much pain that she "had [problems] walking normal." (*Id.*) But he approached her again within a few days. He stopped during the fourth incident, when a naval chief saw him in the act.

At sentencing, the district court calculated a Guidelines range of 63 to 78 months based on a total offense level of 26 and a criminal history category of I. The base offense level for statutory rape is 18. Brown received a four-level enhancement under U.S.S.G. § 2A3.2(b)(2) for misrepresenting his identity because he told the victim that he was 15 years old. He received a two-level enhancement under U.S.S.G. § 3A1.1(b)(1) because he knew or should have known that the victim was "vulnerable" due to her cognitive impairments. Brown also received a five-level enhancement for a "pattern of activity involving prohibited sexual conduct" because he raped the victim on at least two occasions. U.S.S.G. § 4B1.5(b). The court decreased his offense level by three points because Brown accepted responsibility for the offense and assisted authorities in the prosecution of his conduct, U.S.S.G. §§ 3E1.1(a), 3E1.1(b).

After calculating the Guidelines range, the district court considered the sentencing factors in 18 U.S.C. § 3553. As to the nature and circumstances of the offense, the court found that Brown had repeatedly and brutally raped a 13-year old child with intellectual disabilities who was so "significantly compromised" that she had "grave difficulty" answering questions posed to her. (Sentencing Hr'g Tr. 125, R. 58.) The court also found that Brown was "significantly devoid

of any remorse" or appreciation of the consequences of his actions, as evidenced by the detailed depiction of his conduct in his statement to the investigators and his repeated abuse of the victim despite his awareness of her pain. (*Id.* at 124-25.) Although Brown apologized for his actions at the sentencing hearing, the court did not believe that his apology was genuine.

The court also considered Brown's age, mental health, and behavioral history; the potential benefits of incarceration; the need to promote respect for the law; and the need to protect the public. The court then examined whether the Guidelines took into account the circumstances of the offense:

> The guidelines take into account some of the things I've been talking about. They recognize the age of the minor, at least as the minor's under 16 years. They don't recognize that the minor's 13 years old. They don't recognize – well, let me tell you again what they do recognize.
>
> They recognize that there's undue influence on the minor because of the minor's vulnerability, and the minor was a vulnerable victim. . . . They recognize full acceptance of responsibility, and they recognize that the defendant engaged in the prohibited sexual conduct with the minor on at least two separate occasions.
>
> What the guidelines don't capture here from my perspective is, first, the actual age of this 13-year old. They also don't capture the brutality of these rapes, and they don't capture the number of rapes. In other words, there's a significant enhancement, five-level enhancement, for the two separate occasions. That is under 4B1.5(b)(1). We're really talking about four occasions and the fact that the defendant stopped when he was discovered which is extremely troubling to me. We have four instances of rape here, and that's why it seems to me that the guidelines are too low. They don't capture a great deal of what needs to be captured here. . . .
>
> I'm not really persuaded that the guidelines capture the total picture here, the brutality of it, the number of incidents, his response to the incidents, you know, inflicting pain and coming back to do it again and again without any apparent conscience, and then the fact that we have a 13-year old vulnerable child. I keep coming back to that, but to me that's the core of the case.

(*Id.* at 140, 145.)

The court concluded:

This is a unique case. It's hard to apply the guidelines in a unique case. I think an above-guideline sentence, a variance upward is necessary here to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, and to deter others . . .

(*Id.* at 148.)

II.

We review sentences for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Generally, criminal sentences are reviewed for both substantive and procedural reasonableness. *Id.* Brown challenges only the substantive reasonableness of his sentence. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan–Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633 (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)).

In conducting our review, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Because "[d]istrict courts have an institutional advantage over appellate courts in making" sentencing determinations, *Koon v. United States*, 518 U.S. 81, 98 (1996), the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify

reversal of the district court." *Gall*, 552 U.S. at 51. We "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

**A. History of the Guidelines**

Brown's principal objection is that the district court's reasons for the variance are not supported by the history of the Guidelines. For instance, Brown argues that the Guidelines necessarily take into account the seriousness of his conduct because the offense level for statutory rape has evolved over time to be "more retributive." (Appellant Br. 14.) However, a sentencing court must generally use the version of the Guidelines in effect at the time of sentencing as the "initial benchmark," and then determine whether a departure or variance is appropriate based on the particular facts of a case. *Peugh v. United States*, 133 S. Ct. 2072, 2080-81 (2013). That is what the district court did here. It was not required to consider the history of the Guidelines, or to draw conclusions about their adequacy based on a comparison between prior versions and the current one.

Moreover, Brown's argument is at odds with commentary to the current guideline for statutory rape, which acknowledges that "[t]here may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense." U.S.S.G. § 2A3.2 cmt. 6. In other words, even accepting Brown's argument that the base offense level for statutory rape has increased over time and is, thus, more retributive, the commentary continues to recognize that the guideline may not account for the seriousness of a particular offense, as in Brown's case. Thus, his reliance on the history of the Guidelines is unavailing.

### B. Victim's Age

Brown also objects to the district court's statement that the Guidelines do not adequately capture the victim's age. "A district court may base its variance on factors included in the Guidelines, but it may not erroneously proclaim that the factors it cites are *not* included in the Guidelines calculation." *United States v. Smith*, 585 F. App'x 889, 892 (6th Cir. 2014) (citing *United States v. Aleo*, 681 F.3d 290, 300 (6th Cir. 2012)).

In *Aleo*, the district court concluded that the Guidelines "could not possibly have envisioned a crime as horrendous" as the defendant's, and then issued a sentence two and one-half times greater than the top of the Guidelines range based on facts that were already included in the Guidelines calculation. 681 F.3d at 300. This Court found that such reasoning was not sufficiently compelling to support the variance. *Id.* at 301.

*Aleo* is distinguishable. The base offense level for Brown's offense applies where the victim is between the ages of 12 and 15 years old. U.S.S.G. § 2A3.2. The district court expressly acknowledged that the Guidelines account for the victim's age, insofar as it is less than 16 years old. However, the court also recognized that the "actual age" of the victim in this case was not "captur[ed]" by the Guidelines. (Sentencing Hr'g Tr. 140, R. 58.) Unlike *Aleo*, then, the district court did not make the mistake of assuming that the victim's age was not part of the Guidelines calculation; rather, it implicitly recognized that the Guidelines account for a range of ages, but do not make distinctions within that range, even though a younger victim generally makes for a more serious offense. This sort of analysis, which focuses on the "particular facts of a case," is permitted. *See Peugh*, 133 S. Ct. at 2080. Although the victim's age might not have been a particularly compelling basis for an upward variance when considered on its own, the district

court did not abuse its discretion when considering it as one of several factors which, "on a whole," justify the variance. *See Gall*, 552 U.S. at 51.

Brown cites a comment in the Guidelines stating that "[i]t is assumed that at least a four-year age difference exists between the minor and the defendant, as specified in 18 U.S.C. § 2243(a)[.]" U.S.S.G. § 2A3.2 cmt. (background). This comment merely reiterates one of the requirements for statutory rape under 18 U.S.C. § 2243(a). There is no indication that the district court assumed that an age difference of less than four years could be subject to the guideline. Thus, Brown's objection is without merit.

### C. Pattern of Conduct

Brown makes a similar objection to the district court's assessment that the Guidelines do not adequately account for his pattern of conduct. The enhancement in U.S.S.G. § 4B1.5(b) applies to a pattern involving "*at least two* separate occasions" of prohibited sexual conduct with a minor, U.S.S.G. § 4B1.5 cmt. 4(B)(i) (emphasis added); thus, Brown claims that the enhancement already accounts for the pattern of four incidents in his case. According to the district court, however, "[t]here are some patterns that are more significant than others. Yes, [Brown] got the increase because there's a pattern which is two, . . . [but] [w]e've doubled that in terms of the number of events here. . . . At some point the pattern becomes more serious, and the guidelines don't capture it." (Sentencing Hr'g Tr. 142, R. 58.) On this point, the court noted that it was influenced, in part, by the "brutality" of Brown's pattern of conduct. (*Id.*)

Again, this is not a case where the district court wrongly assumed that specific conduct was not covered by the enhancement. *Cf. United States v. Melchor*, 515 F. App'x 444, 449 (6th Cir. 2013) (vacating a sentence above the Guidelines range because the district court erroneously

believed that a fourth instance of sexual abuse or exploitation of a minor was not covered by the "pattern of activity" enhancement in U.S.S.G. § 2G2.2(b)(5)). Rather, the court concluded that the enhancement did not adequately account for the *seriousness* of Brown's *particular pattern* of conduct, which involved four incidents of "inflicting pain and coming back to do it again and again without any apparent conscience." (Sentencing Hr'g Tr. 145, R. 58.) Because a pattern of sexual abuse can be established without the number and frequency of the incidents in Brown's case, and without the repeated infliction of physical pain, the district court's conclusion was a reasonable one.

Brown notes that the enhancement in § 4B1.5(b) has been amended over time to make it more punitive. The prior version required multiple victims, whereas the current version applies when the defendant has engaged in "at least two separate occasions" of prohibited conduct with a minor, even if those separate occasions are with the same victim. *See United States v. Brattain*, 539 F.3d 445, 448 (6th Cir. 2008) (explaining the amendment). Brown claims that the district court essentially rejected the enhancement based on "a policy disagreement on whether the [g]uideline is punitive enough." (Appellant Br. 19.) Brown compares this case to *United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012), in which the district court declined to apply a sentencing guideline because it had been amended by Congress and the court was concerned that the guideline was influenced by political considerations. *Id.* at 761. This Court noted that when "a district court chooses to disagree with a guideline, we will 'scrutinize closely' its reasons for doing so." *Id.* (quoting *United States v. Herrera–Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009)).

*Bistline* does not apply. The district court did not reject or disagree with the enhancement in U.S.S.G. § 4B1.5(b), on policy grounds or otherwise. Instead, the court applied the

enhancement but reasonably concluded that it did not adequately capture the specific facts of Brown's case.

### D.  Sentencing Disparities

Finally, Brown contends that his sentence would not avoid unwarranted sentencing disparities because other defendants have received lower sentences in other cases for more egregious conduct. Brown cites several cases from around the country, but none of the cited cases involved facts comparable to this one, i.e., four traumatic and painful rapes of a 13-year old child within a short span of time. The goal of 18 U.S.C. § 3553(a)(6) is to eliminate "disparities among defendants with similar records who have been found guilty of similar conduct"; "[i]t is not concerned with disparities between one individual's sentence and another individual's sentence[.]" *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Moreover, the district court necessarily gave weight to the need for avoiding sentencing disparities when using the Guidelines range as a starting point for its analysis, *see Gall*, 552 U.S. at 54. It then concluded that all of the relevant circumstances made Brown's case deserving of an above-Guidelines sentence. We discern no abuse of discretion in that decision.

III.

In summary, the record establishes that the district court carefully considered the Guidelines range, weighed the pertinent factors in § 3553(a), and determined that an upward variance of 18 months was warranted based on "an individualized assessment . . . of the facts presented." *Gall*, 552 U.S. at 50. We cannot say that this determination was arbitrary or unreasonable. Even if the Sentencing Guidelines adequately consider the victim's age and the defendant's pattern of conduct, the district court sufficiently based Brown's upward variance on

factors that the Guidelines do not take into account—the brutality of the rapes, the pain the victim endured, the degradation of the victim, and the fact that the rapes stopped only because Brown was caught in the act.  The judgment of the district court is therefore AFFIRMED.