NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0052n.06

No. 22-5297

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| JOSHUA E. PREECE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before:  COLE, NALBANDIAN, and READLER, Circuit Judges.

**NALBANDIAN, Circuit Judge.**  Joshua Preece, a Deputy Sheriff in Bath County, Kentucky, pleaded guilty under 18 U.S.C. § 2251(a) to inducing a minor to engage in sexually explicit conduct to produce a visual depiction.  As part of his sentence, he received a Guidelines enhancement for being a repeat and dangerous sex offender against minors.  He argues that the court improperly relied on Guidelines commentary in applying the enhancement and thus in calculating his sentencing range.  We disagree and affirm.

## I.  Facts

On November 5, 2018, Bath County Deputy Sheriff Joshua Preece answered a call about a 17-year-old girl who was reportedly out of control.  According to her mother, the Minor Victim ("MV") suffered from severe anxiety disorder.  Preece told MV's mother that he could do nothing because MV was a minor.  But he asked if he could take MV somewhere else for the night "so everyone could calm down."  (R. 34, Plea Agreement, PageID 213, Page 2)  MV's mother

"reluctantly" agreed that Preece could transport MV to a friend's house. (R. 34, Plea Agreement, PageID 213, Page 2)

Preece picked up MV from her home that night. He deliberately drove past her friend's house to a barn in a remote area. Once there, he began talking to MV about sexual topics. He proceeded to sexually assault her in the car.

After the assault, Preece drove MV to her friend's house. He asked for her phone number, but she gave him her Snapchat account information instead. He then messaged her with a request for photos, and she sent a picture of her breasts. He requested more explicit photos, so she sent him two of her vagina.

MV reported this occurrence to her mother and grandmother the next day. MV's mother requested an investigation at the Bath County Attorney's Office that same day. The Bath County Attorney requested the Kentucky State Police investigate and secured a search warrant. While the warrant was being executed, Preece admitted to transporting MV, but denied abusing her and having a Snapchat account. A search of Preece's phone revealed that he had a Snapchat account and that he had been communicating with MV via Snapchat. And MV wasn't Preece's only victim. Investigators discovered that multiple self-identified minors had sent Preece sexually explicit photographs via the Whisper app.

## II. Procedural Posture

Based on this investigation, a federal grand jury indicted Preece on 18 counts. Nine of the counts related to inducing a minor to produce sexually explicit images under 18 U.S.C. §§ 2251(a) & (e) (Counts 1-9). And nine other counts related to the receipt of child pornography under 18 U.S.C. §§ 2252(a)(2) & (b)(1) (Counts 10–18).

Preece pleaded guilty to Count 1 as well as a forfeiture allegation, and the government dismissed the other charges. As part of his plea, Preece admitted to the facts of MV's abuse and that his phone contained images of other self-identified minors. The Probation Department prepared a Pre-Sentence Report (PSR) based on the plea. The PSR recommended that Preece receive several sentencing enhancements.

The issue here is probation's recommendation that Preece receive a five-point enhancement as a repeat and dangerous sex offender against minors, under U.S.S.G. § 4B1.5(b).[1] The government argued that the court could consider Preece's conduct toward victims other than MV in applying the enhancement even though the government had dropped those charges as part of Preece's plea agreement.[2]

Preece objected. He argued, as he does here, that because "his offense conduct occurred on a single day and involved a single victim, Mr. Preece's relevant conduct does not establish the 'pattern of activity' necessary to trigger the enhancement." (R. 45, Preece Sentencing Memo, PageID 285–86; Page 5–6) The Probation Department declined to revise its recommendation. It found that the uncharged offenses against other minor victims justified the enhancement.

At sentencing, the district court rejected Preece's interpretation and determined that the § 4B1.5(b) enhancement applied. The district court found the commentary in § 4B1.5 of the Guidelines particularly persuasive. Comment 4(B)(ii) of the Guidelines states that

---

[1] In the plea agreement, the parties stated that they disagreed "as to the applicability of United States Sentencing Guidelines (U.S.S.G.) § 4Bl.5(b), the 5 level enhancement which applies if the Defendant 'engaged in a pattern of activity involving prohibited sexual conduct.'" (R. 34, Plea Agreement, PageID 214–15, Page 3–4)

[2] The PSR at first assigned Preece an offense level of 42. Preece had a criminal history category of I. But following Preece's objection, the Probation Department found that a two-level enhancement under U.S.S.G. § 2G2.1(b)(3) did not apply, and the court agreed.

"An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion."

Finding that Preece had an offense level of 40 and a criminal history category of 1, the court calculated Preece's Guidelines range as 292 to 365 months, subject to a statutory maximum sentence of 360 months. The court sentenced Preece to 300 months imprisonment followed by supervised release for life. Preece timely appealed.

## III. Standard of Review

In considering a district court's calculation of the advisory Guidelines range, "we review the district court's factual findings for clear error and its legal conclusion de novo." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007). We grant "due deference to the district court's application of the Guidelines to facts." *United States v. Moon*, 513 F.3d 537, 539–40 (6th Cir. 2008) (quotation omitted). But we subject "the district court's legal interpretation of the Guidelines, including mixed questions of law and fact," to de novo review. *United States v. Settle*, 414 F.3d 629, 630 (6th Cir. 2005) (citation omitted). A district court's application of facts to the Guidelines is a mixed question of law and fact. *United States v. Sand*, 948 F.3d 709, 713 (6th Cir. 2020) (citation omitted).

## IV. Analysis

The Sentencing Guidelines require us to first identify the guideline section corresponding to the defendant based on the offense of conviction, and then to determine the offense level considering the defendant's relevant conduct. U.S.S.G. § 1B1.2; *see also United States v. Gill*, 348 F.3d 147, 151 (6th Cir. 2003). Preece was convicted under 18 U.S.C. § 2251(a). And the applicable offense Guideline is U.S.S.G § 2G2.1. *See* U.S.S.G. App. A. In addition to the relevant

offense conduct, the defendant's offense-level calculation also includes any adjustments, like the enhancement at issue here.

U.S.S.G. § 1B1.3 directs the court how to determine relevant conduct at each stage of the sentencing process. 'Relevant conduct,' as described in § 1B1.3, reads in relevant part:

> (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; . . .
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction; . . .
>
> (b) Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence). Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

The Guideline's text controls its scope. *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam). Here, the relevant sentencing enhancement is in Chapter Four.

So we turn to U.S.S.G. § 4B1.5. Under that provision, the sentencing court applies a five-point enhancement when it finds that "the defendant engaged in a pattern of activity involving prohibited sexual conduct." *Id*. § 4B1.5(b). To understand the terms of this section of the Guidelines, we may turn to the commentary, as long as the commentary does not add to the offenses specified in the statutory text or interpret terms in a way that expands the application of the Guidelines beyond what the text supports. *Havis*, 927 F.3d at 386; *United States v. Riccardi*, 989 F.3d 476, 479–80 (6th Cir. 2021); *see also United States v. Hollon*, 948 F.3d 753, 757 (6th Cir. 2020). The commentary of U.S.S.G. § 4B1.5 specifies that a court can find that a defendant

engaged in a pattern of activity if "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id*. § 4B1.5(b) cmt 4(B)(i). And "[a]n occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion . . . resulted in a conviction for the conduct that occurred on that occasion." *Id.* § 4B1.5(b) cmt 4(B)(ii).

Here, the district court determined that Preece satisfies the requirements for the five-point enhancement based on his assault of MV as well as his inducement or attempted inducement of other minors to engage in sexually explicit conduct.[3] The district court must find relevant conduct by a preponderance of the evidence. *United States v. Rankin*, 929 F.3d 399, 407 (6th Cir. 2019) (citing *United States v. White*, 551 F.3d 381, 383–84 (6th Cir. 2008) (en banc)). But as long as that standard is satisfied, the conduct can be charged, uncharged, dismissed, or even acquitted. *Id.*; *see also United States v. Corp*, 668 F.3d 379, 391–92 (6th Cir. 2012); *United States v. Brown*, 327 F. App'x 526, 536–37 (6th Cir. 2006).

At sentencing, the government presented evidence that Preece had engaged in prohibited sexual conduct with another minor on at least two occasions.[4] Indeed, Preece had originally been indicted on eight additional counts involving depictions of sexually explicit conduct of minors. And his offense of conviction provides one occasion of prohibited sexual conduct. *See United States v. Wandahsega*, 924 F.3d 868, 886 (6thCir. 2019) ("Binding caselaw also supports the proposition that the two required occasions of prohibited sexual conduct for § 4B1.5(b)(1)'s enhancement may include the instant offense of conviction.") (collecting cases).

---

[3] In his plea, Preece admits that images of self-identified minors were found on his phone. He does not challenge the court's factual findings about the other minor victims.

[4] The indictment and the Probation Department identified at least 8 additional instances in which Preece engaged in prohibited sexual conduct.

The district court held that this evidence was sufficient to justify the five-point enhancement. In doing so, the court noted that "[U.S.S.G. § 4B1.5(b)] applies, [and] that the commentary is of assistance[.]" (R. 56, Preece Sentencing, PageID 383, Page 25) The district court's application of the enhancement here is also consistent with our precedent, which has permitted a pattern finding based on charged though not convicted conduct involving prohibited sexual conduct with multiple minor victims, like here.[5] *See Corp*, 668 F.3d at 391–92 (holding that a pattern of activity existed based on three instances of prohibited sexual activity: the defendant's charged conduct, conduct related to a previous conviction, and an image of an unidentified girl who appeared to be a minor); *see also Brown*, 327 F. App'x at 536–37 (holding that the district court appropriately applied the enhancement based on the defendant's exploitation of at least one of his step-granddaughters and another victim). So we may consider Preece's conduct against the other minor victims for purposes of a U.S.S.G. § 4B1.5(b) enhancement.

Preece's main argument is that the trial court improperly applied the § 4Bl.5(b) enhancement because the court should only have considered acts that occurred during the commission of his offense of conviction. Because all of the conduct underlying his conviction occurred in a single day and only involved one victim, he argues that it could not justify a repeat and dangerous sex offender enhancement.

Preece's argument is based on a misunderstanding of the Guidelines calculation. At sentencing, Preece described the calculations as "an order of operations." (R. 56, PageID 382,

---

[5] We have likewise held that this enhancement may apply when a defendant engages in repeated acts of prohibited sexual conduct with a single minor victim. *See United States v. Paauwe*, 968 F.3d 614, 618 (6th Cir. 2020) ("In enhancing the sentence of one engaged in a 'pattern of activity,' § 4B1.5 took aim at multiplicity in acts, not multiplicity in victims."); *United States v. Brattain*, 539 F.3d 445, 448 (6th Cir. 2008) (holding that the "the plain language of § 4B1.5(b)(1) and its application note" made clear that the enhancement could apply when a defendant engaged in prohibited sexual conduct against a single victim more than once).

Page 24)  In approaching sentencing, he claims "[w]e start at the beginning and we go through each chapter. But the things that we do earlier in the guidelines, we have to continue to abide by those principles as we move forward through the other sections."  (R. 56, PageID 382–83, Page 24–25)  In other words, Preece argues that his sentence must be determined by 1) identifying the conviction statute, 2) determining the relevant conduct that applies to the offense of conviction under U.S.S.G. § 1B1.3, and 3) considering any other enhancements, but in doing so applying the relevant conduct standard identified in step 2.  Preece's order of operation is not a problem per se– the problem is the limitation that he places on what conduct can be considered in applying his U.S.S.G. § 4B1.5 enhancement.

Preece assumes that U.S.S.G. § 1B1.3(a) governs the determination of relevant conduct pertaining to his U.S.S.G. § 4B1.5 enhancement.  The crux of Preece's argument stems from U.S.S.G. § 1B1.3's grouping distinction.  Under § 1B1.3, if a defendant commits an offense when U.S.S.G. § 3D1.2(d) would require grouping of multiple counts, the Guidelines authorize the sentencing court to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" that were "part of the same course of conduct or common scheme or plan as the offense of conviction[.]"  U.S.S.G § 1B1.3(a)(1)(A), (a)(2).  But when the defendant's offense does not permit grouping, the court may only consider acts and omissions that "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  U.S.S.G § 1B1.3(a)(1).[6]

---

[6] Because the clause describing the narrow application of relevant conduct is placed immediately after the discussion of relevant conduct in cases of joint criminal liability in § 1B1.3(a)(1)(B), it might seem that these restrictions only apply in that context.  A more natural reading of the text, however, is that § 1B1.3(a)(1)(A) outlines the acts of solo defendants that may be considered, that § 1B1.3(a)(1)(B) does likewise in the context of joint criminal liability, and that the clause

Preece's offense of conviction falls under U.S.S.G § 2G2.1, which is one of the Guidelines that covers sexual exploitation of a minor. Such offenses "are explicitly excluded from § 3D1.2(d)'s multiple-count grouping rule[.]" *United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017). Preece argues that because his "offense of conviction" was not one for which grouping applied, the court had to take the narrow view of relevant conduct under U.S.S.G. § 1B1.3 in applying the § 4B1.5 enhancement.[7] He argues that the court is "really only supposed to be looking at what happened related to Count 1." (R. 56, Preece Sentencing, PageID 371, Page 13)

Preece's approach, however, misses a key step in the analysis. True enough, we must first identify the offense of conviction, and then we turn to U.S.S.G. § 1B1.3 to evaluate the relevant conduct. But, as we previously noted, the text of § 1B1.3 distinguishes between calculations made under Chapters Two and Three, *see* U.S.S.G. § 1B1.3(a), and those made under Chapters Four and Five*, see id.* § 1B1.3(b). If the sentencing enhancement at issue had its roots in Chapters Two or Three, we would be restricted to considering the narrower definition of relevant conduct under U.S.S.G. § 1B1.3. The enhancement here, however, is found in Chapter Four. And "[f]actors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines." *Id.* § 1B1.3(b). This means that

---

describing the timeline in which such conduct may be considered applies to both. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 156 (2012) ("[M]aterial contained in unindented text relates to all the following or preceding indented subparts."). This is also consistent with our practice. *See, e.g., United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017) (applying the narrow definition of relevant conduct in a case with a single defendant); *United States v. Hodge*, 805 F.3d 675, 681 (6th Cir. 2015) (considering the narrow definition of relevant conduct in a case with a single defendant).

[7] As Preece notes, no grouping took place with regards to his sentence. Instead, he argues that the fact that his offense was one for which grouping could not theoretically apply determined that it fell within § 1B1.3's narrow conception of relevant conduct.

rather than look to U.S.S.G. § 1B1.3(a) to determine the relevant conduct for Preece's enhancement, we must look to U.S.S.G. § 4B1.5.

Admittedly, our circuit has not explicitly addressed the relationship between § 1B1.3 and § 4B1.5. But our practice makes clear that we consider Chapter Four enhancements separately from the offense of conviction. For instance, in *Schock*, we applied the narrow reading of § 1B1.3(a) to the consideration of a § 2G2.1(d)(1) enhancement. 862 F.3d at 567. Because the court was applying a sentencing enhancement under Chapter Two of the Guidelines, it appropriately applied the narrow framework. But in *Corp*, we did not take this approach. Like Preece, Corp pleaded guilty to a single count under 18 U.S.C. § 2251(a). 668 F.3d at 382. Still, the court considered conduct from a separate conviction and uncharged conduct in applying the § 4B1.5(b) sentencing enhancement without confining itself to the narrow approach of § 1B1.3(a). *Id.* at 391–92. And our sister circuits have held that where Chapter Four factors are considered, the relevant conduct limitations of § 1B1.3(a) do not apply. *See, e.g.*, *United States v. Gaffney-Kessell*, 772 F.3d 97, 100 n.6 (1st Cir. 2014); *United States v. Schrode*, 839 F.3d 545, 552 (7th Cir. 2016).

Preece relies on his understanding of relevant conduct to argue that the district court contradicted the Sixth Circuit's recent en banc decision in *United States v. Havis*, 927 F.3d 382. In *Havis*, we held that Application Note 1 to § 4B1.2(b) impermissibly allowed a sentencing court to include attempt crimes in the list of controlled substance offenses when applying the enhancement, because the Guideline itself would not bear that construction. 927 F.3d at 386–87. We observed that while commentary in the Guidelines may be used to interpret a provision, it may not be used to add to the offenses listed in the Guidelines. *Id.* This is because, unlike the

Guidelines themselves, the commentary "never passes through the gauntlets of congressional review or notice and comment." *Id.* at 386.

Preece argues that the court's consideration of the § 4B1.5 commentary impermissibly expanded his relevant conduct based on an application note rather than the text of a Guidelines provision. This, he argues, was a violation of *Havis*. But Preece reads too much into *Havis*. As we have explained, we use the text of the Guidelines (here, § 1B1.3(b)) to direct the sentencing judge to the relevant sentencing provision (here, § 4B1.5(b)), at which point he then interprets the text of the sentencing provision. At no point does this lead us to expand upon the Guidelines text. Preece's logic seems to suggest that because the court turned to the commentary of § 4B1.5, and because its reading of that commentary allowed it to consider more conduct than a narrow reading of § 1B1.3(a) would allow, it impermissibly expanded the scope of the Guidelines. But the text of the Guidelines makes clear that § 4B1.5(b), *not* § 1B1.3(a), controlled the court's reading of relevant conduct. So the district court's decision is consistent with *Havis*.

And the district court's interpretation of the § 4B1.5 commentary also does not conflict with *Havis*. Again, *Havis* states that we may not use the commentary to expand the meaning of the Guidelines beyond what the text will allow. *Havis*, 927 F.3d at 386–87. But we may consider commentary for interpretive guidance. *Id.* at 386 ("[A]pplication notes are to be interpretations of, not additions to, the Guidelines themselves." (citation and alterations omitted)). And since *Havis*, we have held that "[t]his Court should . . . treat the commentary to the Guidelines as authoritative." *Hollon*, 948 F.3d at 757 (quoting *United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005)).[8]

---

[8] Of course, the commentary is only authoritative when it does not expand the meaning of the Guidelines beyond what the text will allow. And we have recognized that impermissible expansion does not only occur when the commentary adds offenses that the Guidelines text does not list, but

Without the limiting language of U.S.S.G § 1B1.3(a)(1), the text of § 4B1.5(b) does not limit a sentencing court to considering only the offense of conviction. Instead, § 4B1.5(b) applies to a defendant who engages in a "pattern of activity involving prohibited sexual conduct." And we have found that uncharged conduct may be considered as relevant "activity involving prohibited sexual conduct" in applying a § 4B1.5(b) sentencing enhancement. *Corp*, 668 F.3d at 391–92. The court's use of the commentary to determine that Preece's uncharged conduct could be considered did not impermissibly expand the scope of § 4B1.5(b) relevant conduct.

## V. Conclusion

Because the district court did not err in applying the § 4B1.5(b) sentencing enhancement, we AFFIRM Preece's sentence.

---

also when it is used to interpret terms in the Guidelines in a way the text does not support. *Riccardi*, 989 F.3d at 479–80.